NOT FOR PUBLICATION                          [Dkt. No. 53]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| CATHERINE VERME-GIBBONEY,<br><br>    Plaintiff,<br><br>                    v.<br><br>THE HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY, ET AL.<br><br>    Defendants. | Civil No. 11-3796(RMB/JS)<br><br>**OPINION** |

Appearances:

David S. Rochman
1930 Route 70 East, Suite G39
Cherry Hill, NJ 08003
     Attorney for Plaintiff

Kathleen A. Mullen
Brian P. Downey
Pepper Hamilton LLP
100 Market Street, Suite 200
P.O. Box 1181
Harrisburg, PA 17108-1181
     Attorneys for Defendant Hartford Life and Accident
     Insurance Company

**BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff Catherine Verme-Gibboney ("Plaintiff") brings this action seeking the reinstatement her long-term disability benefits, which were terminated by Defendant Hartford Life and Accident Insurance Company ("Hartford" or "Defendant").

Defendant has moved for summary judgment. [Dkt. No. 53]. For the reasons that follow, Defendant's motion is GRANTED.

I.   **Background**[1]

A.   **Plaintiff Complains of Illness and Files for Long-Term Disability Benefits**

Plaintiff was an employee at GlaxoSmithKline from August of 1997 through January 9, 2009, and as an employee, she participated in the GlaxoSmithKline Group Benefit Plan. [Dkt. No. 53-11, Defendant's Statement of Material Facts Not In Dispute ("DSMF") at ¶ 1]. The plan, which was issued by Hartford, provided long-term disability benefits to qualified employees pursuant to the terms of the plan. [Dkt. No. 53-3, Group Benefit Plan (the "Plan") at 4]. Under the terms of the Plan, Hartford will pay monthly disability benefits if the participant "become[s] Totally Disabled while insured under this plan . . . and [the participant] submit[s] Proof of Loss satisfactory to us." [Plan at 9]. Totally Disabled means that the participant is prevented "from performing the Essential Duties of your Own Job[.]" [Plan at 20]; [Dkt. No. 60-1, Plaintiff's Response to Statement of Material Facts ("PSMF") at

---

[1]     The Court construes all material facts in favor of Plaintiff, as she is the non-moving party. See Big Apple BMW, Inc. v. BMW of North Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)(holding that in deciding a motion for summary judgment, courts must construe all material facts in favor of the nonmovant).

2]. Proof of Loss includes "any and all medical information, including x-ray films and photocopies of medical records, including histories, physical, mental or diagnostic examinations and treatment notes . . . . All proof submitted must be satisfactory to us." [Plan at 15]. The Plan gives Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." [Plan at 16].

Plaintiff's "Own Job" at GlaxoSmithKline was categorized as sedentary. [DSMF at ¶ 2; Dkt. No. 53-3-9, Administrative Record (hereinafter "HLI"), HLI0470].[2] Her job required her to lift "10lbs. max and occasionally lift and carry items, mostly 5-6 hours sitting[.]" Plaintiff also had to read literature, author material, edit, perform presentations, and train customers, students, and residents. [HLI0470].

On July 29, 2008, Plaintiff visited a doctor complaining of dizziness and nausea, which she said made her unable to drive. [HLI0396; PSMF at ¶ 4; DSFM at ¶ 4]. Patrick Hall, M.D., examined Plaintiff, noted that her ears appeared healthy, and

---

[2]   Plaintiff's Response to Defendant's Statement of Material Facts disputes the contention that Plaintiff's job was sedentary, asserting instead that it was classified as "light-work at best." [PSMF at ¶ 2]. However, Plaintiff has not made use of this contention anywhere in her briefing. Because Plaintiff does not rely on this contention, it does not have an effect on the Court's decision.

prescribed valium to treat the dizziness. Id. Following her visit to Dr. Hall, Plaintiff underwent an MRI brain scan, which revealed "no significant brain abnormality present." [HLI0400].[3]

Plaintiff next visited P. Todd Rowan, M.D., who arranged testing on Plaintiff and concluded that Plaintiff was "unable to drive at this time." [PSMF at ¶ 6; HLI0385; DSMF at ¶ 6]. Audiogram testing on Plaintiff in October of 2008 showed no "objective indications for central vestibule-ocular pathway involvement" and noted that the "patient's ability to maintain upright stance" was normal. [HLI0254].

Plaintiff saw another doctor, Xiaoping Ma, M.D., on December 8, 2008, again complaining of dizziness and nausea. [HLI0461]. Dr. Ma wrote in her notes that Plaintiff's MRI was "normal" and her symptoms "are likely due to oversensitive vestibular system and superimposed residua from" a recent cold. [HLI0463]. In addition, Dr. Ma wrote that Plaintiff may have suffered from autonomic dysfunction with "dizziness, nausea, vomiting: complex partial seizures." [PSMF at ¶ 8]. Dr. Ma also wrote that Plaintiff would continue taking valium. Id. Plaintiff

---

[3]     Plaintiff notes that the brain scan also showed that the "calvarium appears mildly inhomogenous." However, the radiologist concluded that was of "unknown if any clinical significance." [HLI0400]. Plaintiff has not made use of this fact in her briefing.

underwent more testing in January of 2009, all of which returned "normal" results. [PSMF at ¶ 9; DSFM at ¶ 9].

After visiting Dr. Ma, Plaintiff began physical therapy. When describing her symptoms to the physical therapist, Plaintiff wrote that she had "unstable gait and general unstableness . . . cannot drive, cannot walk any long length/distance without holding walls or onto something." [HLI0345].

Plaintiff visited Dr. Ma again in April of 2009, reporting that her vertigo had gotten worse. [HLI0455]. Dr. Ma wrote in her records that Plaintiff "has difficulty to drive [sic]" but "can ambulate with valium. She has difficulty to [sic] read due to blurry vision and unable to focus." [HLI0455]. Plaintiff also reported to her physical therapist in April that her symptoms had not changed. [HLI0446]. In June of 2009, Plaintiff ended physical therapy because she believed it was no longer helpful, and that her dizziness and balance had worsened. [PSMF at ¶ 14; DSMF at ¶ 14].

On May 11, 2009, Plaintiff signed an application for long-term disability benefits, stating that she had stopped working on January 9, 2009 because her inability "to drive and/or tolerate motion" and constant unsteady gait and nausea made her unable to work. [HLI0483]. In support of her application,

5

Plaintiff submitted a variety of medical records. Plaintiff submitted a note from Alexandra Sonyey, M.D., that said "patient is unsteady, unbalanced while standing/walking" and that Plaintiff could not drive or make repetitive hand motions for extended periods of time. [HLI0490; PSMF ¶ 16; DSMF at ¶ 16]. Plaintiff also submitted to Hartford records from her visits with Dr. Rowan. [PSMF at ¶ 17; DSMF at ¶ 17]. In addition, Plaintiff submitted a report from Peter Blumenthal, M.D., a medical examiner that Plaintiff had seen on the request of her employer, and who reviewed Plaintiff's medical records and concluded that work from home was her only "viable option." [PSMF at ¶ 18; DSMF at ¶ 18].

Other records reviewed by Hartford included a report from Thomas Wilcox, M.D., who recommended continued therapy, [HLI0231], and a report from Sandra A. Paluzzi, D.O., who concluded that Plaintiff "is unable to return to work because of her inability to drive. I also believe that she is unable to work from home, as excessive visual stimulation worsens her symptomatology and I believe reading, evaluating data, and computer work all worsen her symptoms. Thus, I believe she should move on to long-term disability." [HLI0287]. Considering this information, Hartford approved Plaintiff's application for long-term disability benefits on August 3, 2009. [HLI0244].

**B.    Hartford Acquires New Evidence that Plaintiff Is Not Disabled and Terminates Her Benefits**

After approving Plaintiff's benefits, Hartford attempted to call Plaintiff and found out that Plaintiff had traveled to Cooperstown, New York to see a baseball game. [HLI0243; DSMF at ¶ 23]. Because Plaintiff had claimed she was unable to travel to work, this news conflicted with Plaintiff's earlier claims. [HLI0243; DSMF at ¶ 23]. Hartford thus placed Plaintiff under video surveillance and observed her doing many of the activities she claimed she could not do: driving as a passenger in a car, standing, walking, reaching, holding, lifting, and bending at the waist in excess of 90 degrees, all without braces or aids. [HLI0209]. When Hartford contacted Plaintiff about the video, Plaintiff admitted in a signed statement that the video did "accurately depict my level of functionality." [HLI0159]. She also admits to these facts in her brief. [PSMF at ¶ 32]. Plaintiff also added that her medications had made her feel less dizzy and nauseated. [PSMF at ¶ 30; DSMF at ¶ 30].

Hartford next contacted Dr. Rowan and Dr. Paluzzi, sending them footage from the surveillance video. [HLI0146-149]. In response to this information, both doctors answered "yes" to the question of whether Plaintiff "appears to have the ability to function up to [40] hours per week with no activity limitations or restrictions." [HLI0146-149]. Upon receiving these responses,

7

Hartford terminated Plaintiff's benefits claim on January 14, 2010. [HLI0140]. Among other things, Hartford cited the video surveillance, its interview with Plaintiff, and the responses from Rowan and Paluzzi as the basis for its decision that Plaintiff was not disabled from performing her job. [HLI0141].

Plaintiff appealed this determination on July 12, 2010, arguing that her previously documented condition continued. [PSMF at ¶ 37; DSMF at ¶ 37]. She also claimed that her medications, including valium, made her unable to work at a computer. [PSMF at ¶ 38; DSMF at ¶ 38]. In support of her appeal, Plaintiff submitted a July 12, 2010 letter from Dr. Rowan saying that she could drive on the highway only with valium, and that motion or excessive sensory stimulation was also problematic. [PSMF at ¶ 38; DSMF at ¶ 38].

On appeal, Hartford retained Sergio Loaiza, M.D., and Thomas Klein, M.D., to do an independent review of Plaintiff's medical records. [PSMF at ¶ 39; DSMF at ¶ 39]. Dr. Loaiza reviewed Plaintiff's medical records and spoke with Dr. Rowan. He then concluded that Plaintiff "had no functional limitations, had ability to function up to 40 hours per week." [PSMF at ¶ 42; DSMF at ¶ 42]. Dr. Klein also spoke with Dr. Rowan and reviewed Plaintiff's medical records, concluding that "there were no restrictions and limitations for this claimant as of January 15,

2010." [HLI0114; DSMF at ¶ 43]. Hartford thus notified Plaintiff
on November 22, 2010 that it would uphold its decision to
terminate Plaintiff's long-term disability benefits. [DSMF at
¶ 44; PSMF at ¶ 44]. Hartford's notice cited the evidence noted
in its original termination letter as the basis for its decision
that Plaintiff was not disabled from performing her job, as well
as new information from Loaiza and Klein. [HLI0072]. Hartford's
notice also said that it had considered Rowan's July 12, 2010
appeal letter. [HLI0072].

Plaintiff filed this action in New Jersey state court on
May 5, 2011 seeking to reverse Hartford's decision. Defendant
removed to this Court in July of 2011, [Dkt No. 1], and
subsequently filed the instant motion for summary judgment.
[Dkt. No. 53].

## II.  Standard of Review

Courts must grant summary judgment if "the movant shows that
there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A
fact is "material" if it will "affect the outcome of the suit under
the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986). A dispute is "genuine" if it could lead a "reasonable
jury [to] return a verdict for the nonmoving party." Id. at 248.

The court must draw all inferences in favor of the non-moving

party's evidence, and where the non-moving party's evidence contradicts the movant's, then the court must take the non-movant's evidence as true. Big Apple BMW, 974 F.2d at 1363. If the movant has carried its burden of producing evidence, or pointing to a lack of plaintiff's evidence, in support of summary judgment, then the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(holding that the non-movant must do more than simply show there is some metaphysical doubt as to the material facts).

## III. Analysis

Pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1001, et seq., a participant in an employee benefits plan covered by ERISA may bring suit to recover benefits due under the terms of the plan. See 29 U.S.C. § 1132(a)(1)(B)("A civil action may be brought [by a participant] . . . to recover benefits due to him under the terms of his plan[.]"). When the terms of a plan give the plan administrator discretionary authority to interpret the plan, the court must review challenges to the administrator's decisions under an arbitrary and capricious standard of review. See Miller v. Am. Airlines, Inc., 632 F.3d 837, 844 (3d Cir. 2011)(applying arbitrary and capricious standard because plan gave

10

administrator "discretionary" authority to review claims).[4] The Plan in this case gives Hartford discretion to interpret its terms, [Plan at POL016], and both parties agree that the arbitrary and capricious standard governs this dispute. [Dkt. No. 53-2, Brief of Defendant in Support of Its Motion for Summary Judgment ("Def.'s Br.") 22; Dkt. No. 60, Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Br.") 7]. Accordingly, the Court applies an arbitrary and capricious standard to its review of Hartford's decision.

An administrator's decision is arbitrary and capricious only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." See Doroshow v. Hartford Life & Accident Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009; Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)(same); Lima v. Aetna Life. Ins. Co., 2013 U.S. Dist. LEXIS 181808, at *15 (D.N.J. Dec. 31, 2013)(same). The arbitrary and capricious standard applies to both findings of fact and matters of plan interpretation. Fleisher v. Standard Ins. Co.,

---

[4]    Courts within the Third Circuit use the phrase "arbitrary and capricious" and "abuse of discretion" interchangeably with respect to review of administrator decisions under ERISA. See Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 n.6 (3d Cir. 2010)("We have described the deferential standard of review that we use in the ERISA context as both an 'arbitrary and capricious' standard of review, and a review for 'abuse of discretion.'". This Court will follow the phrasing of the parties in this case by using "arbitrary and capricious."

679 F.3d 116, 121 (3d Cir. 2012) (applying arbitrary and capricious standard to administrator's interpretations of the plan and findings of fact). Furthermore, the court considers "only the evidence that was before the administrator when he made the decision being reviewed." Id. A variety of case-specific factors may show that an administrator's decision was arbitrary. Funk v. CIGNA Group Ins., 648 F.3d 182, 190 (3d Cir. 2011); Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 526 (3d Cir. 2009). Courts must take account of several different factors and reach a result by weighing all of those factors. Schwing, 562 F.3d at 526.

Plaintiff argues that several factors establish that Hartford's decision was arbitrary and capricious. Those factors are as follows:

(A) the evidence went against Hartford's conclusion;

(B) Hartford relied upon the opinions of doctors who reviewed Plaintiff's medical records but did not physically examine Plaintiff, and that these opinions are inadmissible hearsay that inappropriately conflicted with the opinion of Plaintiff's treating physicians;

(C) Hartford had a conflict of interest as Plan administrator; and

12

(D)   the administrator himself, Todd M. Rupert, did not
      have the ability to determine disability benefits
      because the record does not establish that he is
      qualified.

The Court addresses each factor separately.

**A.   Hartford's Decision Was Supported by Substantial
       Evidence**

Hartford argues that the evidence supports its decision
that Plaintiff was not disabled. In reply, Plaintiff asserts
that the evidence did not support Hartford's decision, citing
medical records prior to June 2009 in support of this argument.
[Pl.'s Br. 10 (citing medical record from 2008 until June of
2009, and concluding without legal citations that "[t]herefore,
Plaintiff evidences an arbitrary and capricious application of
the Plan Administrator [sic]"); Pl.'s Br. 12 "[T]he weight of
the evidence . . . clearly makes the reversal of the defendant's
arbitrary and capricious decision [sic]"].

A plan administrator's decision must be supported by
substantial evidence. <u>Fleisher</u>, 679 F.3d at 121; <u>McCann v. Unum
Provident</u>, No. 11-cv-3241, 2013 U.S. Dist. LEXIS 36781, at *34
(D.N.J. March 18, 2013). Substantial evidence is "such relevant
evidence as a reasonable mind might accept as adequate to
support a conclusion." <u>Fleisher</u>, 679 F.3d at 121 (citing <u>Soubik
v. Dir., Office of Workers' Comp. Programs</u>, 366 F.3d 226, 233

13

(3d Cir. 2004)); McCann, 2013 U.S. Dist. LEXIS 36781, at *34. However, a "court may not substitute its judgment for that of the defendants in determining eligibility for plan benefits." Patrick v. Devon Health Servs., 828 F. Supp. 2d 781, 793 (E.D. Pa. 2011)(citing Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000)).

Plaintiff's argument relies only on the evidence in the administrative record favorable to Plaintiff – evidence prior to Hartford's initial determination on August 3, 2009 that Plaintiff was disabled and entitled to benefits. However, Hartford subsequently acquired new evidence that Plaintiff was not disabled, and its decision to terminate benefits was based on this new evidence, which has not been adequately addressed or refuted by Plaintiff. Video surveillance showed that Plaintiff was capable of driving as a passenger and engaging in physical activity without assistance in balancing herself. [HLI0209]. And after Hartford sent that video footage to Plaintiff's treating physicians and asked them to give their opinion on Plaintiff's ability to work, both Rowan and Paluzzi told Hartford that Plaintiff appeared capable of functioning 40 hours per week without activity limitations or restrictions. [HLI0146-149]. Furthermore, Plaintiff admitted to Hartford that the video

14

accurately depicted her level of functionality. [HLI0159].
Finally, doctors Klein and Loaiza did an independent review of
Plaintiff's medical records, concluding that she had normal
balance testing, that her record did not establish a vestibular
disorder, that she had no functional limitations, and concluding
that she could function up to 40 hours per week. [PSMF at ¶ 42;
DSMF at ¶ 42, 43]. A reasonable person could accept this
evidence as adequate to support Hartford's conclusion that
Plaintiff was not disabled, and thus Hartford's decision was
based on substantial evidence.[5] Cf. McCann, 2013 U.S. Dist. LEXIS

---

[5]     Plaintiff's brief is at times difficult to follow, and it
        is unclear to the Court if Plaintiff also argues that
        Hartford's decision to terminate benefits, after first
        granting benefits, shows that its action was arbitrary. To
        the extent that Plaintiff makes such an argument, this
        Court disagrees. When a plan administrator awards benefits
        to a claimant, and then terminates those benefits based
        upon the same evidence, this change in position may suggest
        that the termination was arbitrary. See Miller v. Am.
        Airlines, Inc., 632 F.3d 837, 848 (3d Cir. 2011). However,
        an administrator may reverse its decision and terminate
        benefits upon finding new evidence that supports
        termination. See id. (recognizing that an administrator's
        "initial" decision to pay benefits "does not operate as an
        estoppel such that they can never terminate benefits");
        Connor v. Sedgwick Claims Mgmt. Servs., 796 F. Supp. 2d
        568, 586 (D.N.J. 2011)(holding that an administrator may
        terminate benefits when relying on additional evidence not
        originally reviewed); Balas v. PNC Fin. Servs. Group, No.
        10-cv-00249, 2012 U.S. Dist. LEXIS 26027, at *38 (W.D. Pa.
        Feb. 29, 2012)(same); McCann, 2013 U.S. Dist. LEXIS 36781,
        at *37 (same). Here, Hartford had ample new evidence
        supporting its decision to terminate Plaintiff's benefits.
        Hartford terminated Plaintiff's benefits based upon: the
        video surveillance; Plaintiff's admission that the video

15

36781, at *34 (holding administrator's decision to terminate benefits, based on independent medical records review, was supported by substantial evidence); Neptune v. Sun Life Assurance Co., No. 10-cv-2938, 2013 U.S. Dist. LEXIS 131712, at *36 (E.D. Pa. Sept. 16, 2013)(finding administrator had substantial evidence supporting termination when evidence included opinions of independent reviewing physicians and plaintiff's treating physician, and granting administrator's motion for summary judgment); see also Eppley v. Provident Life & Accident Ins. Co., 789 F. Supp. 2d 546, 573 (E.D. Pa. 2011)("[V]ideo surveillance remains a proper method of investigating disability insurance claims.").

**B. Hartford's Reliance on Physicians Who Did a Records-Only Review Was Not Arbitrary**

Plaintiff additionally argues that Hartford's decision was arbitrary and capricious because Hartford relied in part on the opinions of Loaiza and Klein, who reviewed Plaintiff's records but did not see the patient themselves.[6] This Court disagrees. A

---

surveillance was accurate; the reports of Loaiza and Klein; and the opinions of treating physicians Rowan and Paluzzi. All of this evidence came to light only after Hartford's initial decision to grant benefits. The Court thus finds that Hartford's reversal of its initial decision does not weigh in favor of finding termination to be arbitrary and capricious.

[6]   Plaintiff argues that "[t]here is no doubt that the Plan Administrator gave greater credence to 'a peer review' and

plan administrator may rely on the opinions of doctors who have reviewed a patient's medical records, but who have not physically examined the patient. See Bluman v. Plan Adm'r and Trs. for CNA's Integrated Disability Program, 491 F. App'x 312, 316 (3d Cir. 2012)(rejecting plaintiff's argument that the administrator erred by relying on a doctor's opinion, when that doctor had only reviewed plaintiff's medical records); Pearson-Rhoads v. Aetna Life Ins. Co., No. 10-1076, 2011 U.S. Dist. LEXIS 124833, at *36-37 (E.D. Pa. Oct. 28, 2011) ("That the conclusions of Aetna's consultants were based on a paper review, rather than a physical examination, does not show that Aetna acted arbitrarily and capriciously."); Dolfi v. Disability Reins. Mgmt. Servs., Inc., 584 F. Supp. 2d 709, 735 (M.D. Pa. 2008)(holding plan administrator's decision to rely on a doctor's report, when that doctor had done a paper-only review of Plaintiff's records, was not arbitrary).

A plan administrator may also credit "reliable evidence that conflicts with a treating physician's evaluation[.]" Black & Decker, 538 U.S. at 834; Stratton v. E.I. DuPont de Nemours & Co, 363 F.3d 250, 258 (3d Cir. 2004)(upholding district court's finding that insurer did not act arbitrarily by refusing to

---

their findings contained therein [sic], thereby again
establishing not only conflict, but mandating reversal from
this Tribunal." [Pl.'s Br. 12].

credit a report from patient's treating physician). Thus an administrator may choose to credit the opinions of doctors who do a paper-only review, even if those opinions conflict with the views of a plaintiff's treating physician. See Dolfi, 584 F. Supp. 2d at 735 (finding administrator did not act arbitrarily by crediting a paper review of plaintiff's medical records, and discrediting the report of the treating physician); Schlegel v. Life Ins. Co. of N. Am., 269 F Supp. 2d 612, 628 (E.D. Pa. 2003)(same).

The simple fact that Hartford accorded weight to the opinions of doctors Loaiza and Klein is thus not evidence that its termination decision was arbitrary.[7] Although Plaintiff points out that Loaiza and Klein's opinion conflicted with the July 12, 2010 appeal letter written by Plaintiff's treating

---

[7]   Plaintiff has also asserted that the opinions of doctors Loaiza and Klein are inadmissible hearsay. However, in "determining whether a plan participant is eligible for benefits, a plan administrator is not bound by the Federal Rules of Evidence." See Pini v. First Unum Life Ins. Co., No. 12-cv-00698, 2013 U.S. Dist. LEXIS 158080, at *63 (W.D. Pa. Nov. 5, 2013); Speciale v. Blue Cross & Blue Shield Ass'n, 538 F.3d 615, 622 n.4 (7th Cir. 2008). Accordingly, the Court rejects plaintiff's contention that the opinions of Loaiza and Klein are inadmissible hearsay. The cases cited by plaintiff, State v. Townsend, 186 N.J. 473, 494 (2006) and Agha v. Feiner, 198 N.J. 50 (2008), are not even ERISA cases, and are inapposite to the Court's analysis.

18

physician, Dr. Rowan, this fact is also unavailing.[8] The fact
that Hartford chose not to credit Rowan's July 12, 2010 letter,
and to instead credit Loaiza and Klein, cannot alone serve as
evidence that Hartford acted arbitrarily. See Dolfi, 584 F.
Supp. 2d at 735 (holding administrator may credit independent
paper-only review, even though it conflicted with treating
physician). As a matter of law, Hartford had the discretion to
make this credibility determination. Id. In addition, Rowan's
July 12 letter was a reversal of his prior opinion; after
Hartford sent Rowan the video surveillance footage in late 2009,
he replied "yes" to Hartford's question of whether Plaintiff was
capable of functioning up to 40 hours per week without
restrictions. [HLI0147]. The fact that Rowan's July 12, 2010
letter was a reversal of his prior opinion is a fact that lends
further support to Hartford's decision not to credit that

---

[8]    In response to a letter from Hartford on December 17, 2009,
Dr. Rowan told Hartford that he agreed plaintiff was
capable of functioning for 40 hours per work without
restrictions. [HLI0147]. Partly because of this opinion,
Hartford decided to terminate plaintiff's benefits on
January 14, 2010. Plaintiff appealed this determination,
and in support of plaintiff's appeal, Dr. Rowan wrote a
letter on July 12, 2010 that contradicted his statement in
response to the December 17, 2009 inquiry from Hartford. In
his July 12 letter, Dr. Rowan wrote that he had examined
plaintiff on April 13, 2010, and that as of that time
plaintiff had an "inability to drive on busy highways and
driving is only possible when taking valium . . . . Due to
her driving limitations and difficulty with head motions,
it seems that she is unable to work effectively[.]"
[HLI0020].

letter. See Sell v. Unum Life Ins. Co. of Am., 2002 U.S. Dist. LEXIS 22472, at *16 (E.D. Pa. Nov. 20, 2002)(holding that administrator need not credit a physician's letter, written after patient's benefits were terminated, when that letter is contrary to the physician's earlier opinion that Plaintiff was not disabled). Thus, this factor does not weigh against Hartford.

**C. The Decision Is Not Rendered Arbitrary by a Conflict of Interest**

Next, Plaintiff argues that because Hartford evaluates claims and pays benefits, it has a conflict of interest that makes its decision arbitrary. [Pl.'s Br. 11]. This Court disagrees. A conflict of interest may exist when the same party evaluates and pays for employee claims. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008). The existence of a conflict is only one of several case-specific factors a court should consider when deciding if an administrator's decision is arbitrary and capricious. Id. at 117. A conflict of interest may be important to the court's analysis "where circumstances suggest a higher likelihood that it affected the benefits decision," but it may be "less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example,

20

by walling off claims administrators . . . or by imposing management checks[.]" Id.

Here, Hartford both evaluates and pays claims, and so there is a conflict of interest. See Glenn, 554 U.S. at 112. However, this factor is "less important" to this Court's analysis because evidence shows that Hartford took "active steps to reduce potential bias." Id. at 117. Hartford's interrogatories explain that it insulated claims examiners from the financial personnel, separated its appeals and claims examiners, and does not pay bonuses based on the number of claims paid or denied. [Dkt. No. 44-2 at ¶ 3, ¶ 10]. Facing this evidence, Plaintiff points to no evidence raising an inference that the conflict actually influenced the decision in her case. See Smith v. FedEx Freight East, Inc., No. 08-cv-456779, 2010 U.S. Dist. LEXIS 8080, *16 (M.D. Pa. Feb. 1, 2010)(finding Plaintiff could point to no evidence showing that the conflict of interest affected the administrator's decision, and granting defendant's motion for summary judgment).

Because of these active steps to reduce potential bias, this Court concludes that the conflict of interest is "less important" to its analysis under Glenn.[9] Cf. Miller v. Hartford

---

[9]    Alternatively, the existence of a conflict of interest is only one factor of many to be considered. If other factors weigh in favor of upholding the administrator's decision, a

Life & Accident Ins. Co., No. 08-cv-2014, 2010 U.S. Dist. LEXIS
24717, at *12-13, 21 (N.D. Ga. Mar. 17, 2010)(finding that
administrator separated its appeals and claims units and did not
pay bonuses for denying claims, and thus holding that
administrator's decision was not affected by a conflict of
interest).

   D.   **Competency of Hartford's Administrator**

   Finally, Plaintiff argues there is "nothing within the
record to indicate that the defendant's Administrator was even
qualified to make a determination of whether or not the
Plaintiff was in fact disabled . . . . There is nothing within
the record which indicates that [Todd M. Rupert, Defendant's
administrator] had any medical background underlying notice
and/or knowledge as to the terms used, what those terms mean,
any identifiers and whether or not they equate to and qualify

conflict of interest will not alone compel a finding that
the administrator's decision was arbitrary. See Bluman, 491
F. App'x at 315 (upholding administrator's decision despite
finding a conflict of interest, because other factors
weighed in favor of administrator); Baker v. Hartford Life
Ins. Co., 440 F. App'x 66, 68 (3d Cir. 2011)(upholding
Hartford's decision to deny benefits despite a conflict of
interest, after considering this conflict as only one of
several factors). Here, all other factors weigh in favor of
Hartford, and so even without Hartford's active steps to
mitigate the conflict, the existence of a conflict would
not alter this Court's overall conclusion that Hartford's
decision was not arbitrary and capricious. See Evans v.
Employee Benefit Plan, No. 03-4915, 2007 U.S. Dist. LEXIS
55001 at * (D.N.J. July 30, 2007) aff'd 2009 U.S. App.
LEXIS 3426 (3d Cir. N.J., Feb. 20, 2009).

the Plaintiff for that of a disability [sic]." [Pl.'s Br. 14].
Although Plaintiff fails to cite any case law for the
proposition that an administrator must have any particular
qualifications, some courts have held that "the competency of
the claims administrator may be relevant." Fick v. Metro. Life.
Ins. Co., 347 F. Supp. 2d 1271, 1286-87 (S.D. Fla. 2004)(finding
a "nurse consultant" was qualified to be a administrator).

Here, Plaintiff fails to point to any evidence that might
show that the claims administrator was incompetent, lacks a
medical background, or was otherwise not qualified to evaluate
Plaintiff's claim. Accordingly, the Court rejects Plaintiff's
argument. Cf. Norwood v. State Farm Mut. Auto. Ins. Co., No. 04-
cv-1626, 2006 U.S. Dist. LEXIS 5209, at *31 (N.D. Ga. Jan. 27,
2006) (granting administrator's summary judgment motion, based
in part upon finding plaintiff failed to raise an issue of fact
that administrator was incompetent).

## IV.  Conclusion

For the foregoing reasons, Defendant's motion for summary
judgment shall be granted. An appropriate Order will issue this
date.

                              s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              United States District Judge


Dated: March 13, 2014

23